UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JULIA FUSCO,

                     Plaintiff,                        COMPLAINT

        -against-

                                              cv

NEW YORK CITY DEPARTMENT OF
EDUCATION; MICHAEL MCDONNELL,          JURY TRIAL DEMANDED
PRINCIPAL OF MIDWOOD HIGH SCHOOL;
MICHAEL PRAYOR, SUPERINTENDENT OF
HIGH SCHOOLS,

                     Defendants.

---

Plaintiff **JULIA FUSCO**, by and through her attorneys GLASS KRAKOWER LLP, as

and for her Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff teacher Julia Fusco brings this action for violations under the Family Medical

Leave Act ("FMLA"), 29 U.S.C. § 2617, against Defendants for termination of her employment

effective September 8, 2015, based on interference with and retaliation in exercise of her FMLA

rights, and for a declaration pursuant to 42 U.S.C. Section 1983 that she has acquired tenure by

estoppel.

2.     Plaintiff was terminated from her employment as a teacher and denied completion of

probation with the NYCDOE for a period between August 2015 and January 2016.  After a

discontinuance hearing, she was subsequently reinstated by the NYCDOE in January 2016 and

has worked at a different school upon her reinstatement to the NYCDOE.

3.      Plaintiff seeks damages in this action for the gap in her employment following her discriminatory discontinuance which was subsequently reversed.

4.      This action seeks declaratory and equitable relief, compensatory damages, and attorney fees.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over Defendants pursuant to 29 U.S.C. § 2617.

6.      This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. 1391(b), because the claim arose in this District and because the unlawful employment practices were committed in this District.

## THE PARTIES

7.      Plaintiff Julia Fusco is a resident of the City of New York in the County of Kings and the State of New York.

8.      At all times relevant herein, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611.

9.      At all times relevant herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq*, and an "employer" as defined by 29 U.S.C. § 2611.

10.     At all times relevant herein, Defendant MICHAEL MCDONNELL was Principal of Midwood High School within the NYCDOE, and is sued in his official and individual capacity.

11.     At all times relevant herein, Defendant MICHAEL PRAYOR was Superintendent of High Schools, including Midwood High School, within the NYCDOE, and is sued in his official and individual capacity.

## FACTUAL ALLEGATIONS

12.     Plaintiff is a special education teacher with a specialization in biology and general science who has been employed by Defendant NYCDOE since the 2002-03 school year, except between September 2015-January 2016.

13.     Plaintiff began her teaching career with Defendant NYCDOE during the 2002-03 school year at Leon M. Goldstein High School in Brooklyn, New York.

14.     Plaintiff taught at Leon M. Goldstein High School for three years, up through the 2004-05 school year, after which she received tenure in the license area of biology and general science.

15.     Plaintiff received Satisfactory Annual Professional Performance Reviews ("APPR") for the three school years in 2002-03, 2003-04, and 2004-05.

16.     At the end of the 2004-05 school year, Plaintiff was excessed from her position at Goldstein High School due to budget cuts at the school.

17.     As a result of being excessed, Plaintiff was placed at and taught at Erasmus Hall High School in Brooklyn, New York during the 2005-06 school year.

18.     Plaintiff received a Satisfactory APPR for the 2005-06 school year at Erasmus Hall High School.

19.     Plaintiff returned to Goldstein High School for the 2006-07 school year.

20.     Plaintiff received a Satisfactory APPR for the 2006-07 school year at Goldstein High School.

21.     Following the 2006-07 school year, Plaintiff went on maternity leave from March 2007 to September 2009 after the birth of her son.

22.     Plaintiff returned to Goldstein High School for the 2009-10 school year as a science teacher.

23.    Plaintiff received a Satisfactory APPR for the 2009-10 school year at Goldstein High School.

### Arrival at Midwood High School in 2010-11 School Year

24.    Plaintiff was excessed at Goldstein again and began the 2010-11 school year at Midwood High School in Brooklyn, New York, as an Absent Teacher Reserve ("ATR") teacher teaching English.

25.    Plaintiff was hired at Midwood High School in January 2011 after having been there for only four months, based on the school administration's positive impressions of her as a teacher and a dean.

26.    Plaintiff was then appointed at Midwood High School in January 2011 and asked by the Assistant Principal ("AP") of Special Education Maria Rizzi, and former Principal David Cohen to switch from teaching under her biology and general science license to a special education license, because they stated they loved her work with that population and saw her as a very effective teacher working with these special needs students.

27.    Plaintiff agreed to do so because she was promised by the administrators tenure would not be an issue and she started a new license area in special education that year.

28.    Plaintiff also was asked to be the Dean and the In-House Suspension Coordinator at Midwood High School, and she ran the SAVE room successfully for five years at the school.

29.    Plaintiff received satisfactory APPRs for the 2011-12 and 2012-13 school years at Midwood High School, and returned to the school for the 2013-14 school year.

30.    Towards the end of February 2014 in the 2013-14 school year, before the decision had been made to grant Plaintiff tenure, Plaintiff learned that she was 5-6 weeks pregnant.

31.     Plaintiff immediately informed Michael McDonnell, the new Principal of Midwood High School, of her pregnancy.

32.     After informing the administration of her pregnancy, Plaintiff observed a noticeable hostile change in the administration's attitude towards her.

33.     Specifically, Plaintiff's administrators became outwardly cold and hostile in their treatment of her, and began scrutinizing her far more heavily than before.

34.     Plaintiff received her first ever poor observation report, the first in over 7 years, while prior to Principal McDonnell becoming aware of her pregnancy, she had only received glowing observation reports.

35.     This hostility continued through April 28, 2014, when Plaintiff learned that she had miscarried her pregnancy.  Plaintiff was aware of dangers to her pregnancy in mid-February 2014, when she began unusual bleeding and was told to avoid stress and strain which caused her to take days off.

36.     Plaintiff received a disciplinary letter at that time from Assistant Principal (AP) Kathy Farrell for "extending the midwinter recess."

37.     After informing the Midwood administration of her miscarriage, Plaintiff was absent from school on April 28, 2014, due to health issues regarding her miscarriage.

38.     In response to her absences, AP Richard Franzese, Plaintiff's direct supervisor, asked Plaintiff, in sum and substance, if she was sure if she was ever pregnant, and that it was probably for the best that she had miscarried as she could now focus on her tenure.

39.     In addition, AP Franzese suddenly refused to write a letter of recommendation for Plaintiff's tenure portfolio,

40.     On May 5, 2014, Plaintiff met with AP Farrell for a meeting pertaining to her attendance.

41.     At this meeting, AP Farrell questioned Plaintiff about her absences, despite these absences being medically certified.

42.     During this same meeting, AP Farrell also stated that Plaintiff needed to provide documentation that she had a miscarriage.

43.     At the conclusion of the 2013-14 school year, Plaintiff's probationary period in her special education license was extended for an additional year, despite receiving an overall "Effective" APPR rating for the 2013-14 school year.

### 2014-15 at Midwood High School and Discontinuance

44.     Plaintiff's harassment by the Midwood High School administration continued into the 2014-15 school year during her extended probationary year.

45.     During the 2014-15 school year, Plaintiff was assisting in the care of the ailing father.

46.      Plaintiff's made statements to her such as, "why don't you just put your father in a home?" and "It'd probably be for the best if your father just died already" and calling her a "trainwreck".

47.     The school administration also refused to pay her for her work (approximately 16 hours of per session) as a SING advisor, a position she took because she was told she "didn't do enough for the school outside school hours."  The principal told her she was not paid because she "doesn't handle her business" and she forgot to punch her timecard out the day of the show despite the fact that the principal saw her on stage and that she could be seen on the school cameras entering and exiting the building at the times she wrote on her timecard.

48.     Although the administration was aware that the earliest time Plaintiff could drop her son off at school was 7:30 a.m., the administration switched Plaintiff's start-time from 8:20 a.m.—

which had been her start time for the previous three years—to 7:45 a.m, without any proffered reason.   This was done despite her in-house suspension hours not being changed.

49.     During the 2014-15 school year, in the beginning of February 2015, Plaintiff presented to Principal McDonnell a request to use intermittent leave under the Family and Medical Leave Act ("FMLA") for the period of December 1, 2014 to June 30, 2015, to care for her ailing father.

50.     Principal McDonnell initially refused to sign the aforementioned application, stating, "Your mother, husband, or sister should care for your father. Why do you have to do it?"

51.     Principal McDonnell further stated that he did not have to sign Plaintiff's FMLA leave request and that it was up to his discretion.

52.     Principal McDonnell further avoided approving Plaintiff's request by saying that it would cause a hardship at the school.

53.     On February 11, 2015, Plaintiff met with AP Farrell for a disciplinary meeting pertaining to her absences and lateness.

54.     Despite explaining to AP Farrell that these absences were covered by her FMLA leave, AP Farrell simply said "that's not what I heard", and informed Plaintiff that she would be receiving a disciplinary letter to file and be required to use a time card.

55.     Upon information and belief of Plaintiff, Plaintiff was the only teacher required to use a timecard at Midwood High School during the 2014-15 school year.

56.     Ultimately, on or around March 25, 2015, Principal McDonnell verbally and in an email finally agreed to grant Plaintiff's FMLA request.

57.     Notably, Principal McDonnell approved Plaintiff's request for FMLA leave retroactive to December 1, 2014, through March 25, 2015, but would not approve her request for intermittent FMLA leave through June 30, 2015.

58.     The school also never put in the paperwork for the FMLA leave, which eventually caused time to be deducted from her Cumulative Absence Reserve resulting in her missing her last paycheck in August 2015.

59.     On or around March 20, 2015, Plaintiff applied for Line of Duty Injury ("LODI") leave after suffering an injury at school where Plaintiff fractured a bone in her foot and had to be taken in an ambulance to Kings County Hospital.

60.     Despite her LODI being approved, in a letter dated April 24, 2015, Principal McDonnell issued a letter to the Community Superintendent Michael Prayor recommending Plaintiff's denial of completion of probation primarily based on "attendance issues" and "incompetence and a failure to improve."

61.     In his April 24, 2015 recommendation, Principal McDonnell noted that Plaintiff had been absent ten (10) times and late at least five (5) other times during the 2014-15 school year, and had six (6) other absences that he explained may or may not be approved for LODI.  In fact, Plaintiff was out 9 days that year, for days which should have been covered under her FMLA leave.

62.     Principal McDonnell also removed the positive observation reports from Plaintiff's personnel file without her knowledge or permission.

63.     Notably, the aforementioned absences are days in which Plaintiff cared for ailing father or was approved for her LODI injury.

64.     Principal McDonnell, in his April 24th letter, also stated that Plaintiff had failed to improve her pedagogy, despite Plaintiff receiving "Effective" APPRs each of the prior years.

65.    During the 2014-15 school year, Plaintiff received evaluations from Principal McDonnell which were substantially more negative than ones received in prior years, and that were not accurate evaluations of her pedagogy.

66.    In contrast, two APs at the school gave her very positive evaluation reports, and Plaintiff has only received highly effective and effective observation reports since ultimately returning to the NYCDOE at a different school in January 2016.

67.    Upon information and belief of Plaintiff, these evaluations were created as a pretext by Defendant NYCDOE to justify her later denial of completion of probation in August 2015.


**Termination in August 2015 and Internal Appeal**

68.    In a letter dated June 26, 2015, Superintendent Prayor terminated Plaintiff's employment by denying Plaintiff's certification of completion of probation under her special education license, effective August 25, 2015.

69.    On or about November 17, 2015, Plaintiff attended an appeal hearing for her denial of completion of probation at the NYCDOE Office of Appeals and Review in Brooklyn, NY.

70.    On or about November 18, 2015, Plaintiff filed a Notice of Claim with Defendant NYCDOE.

**Reversal of Termination and Reinstatement**

71.    After her internal appeal hearing, on or about December 19, 2015, Plaintiff received a phone call from UFT representatives Jason Goldberg and Debra Poulos informing her she would be reinstated as an appointed teacher, not an ATR.

72.    Plaintiff had been recruited and hired by 2 principals at other schools in June 2015 prior to discovering she was discontinued in August 2015.

73.     Plaintiff also had been working in the summer bridge program at Kingsborough Early College Secondary School ("KECSS") in August 2015 in a per session position before she found out she had been discontinued from Midwood High School as of September 2015.

74.     Plaintiff had accepted a position at KECSS for the 2015-16 school year, but was told by the KECSS principal that she could not work there after she was discontinued.

75.     On or about January 3, 2016, Plaintiff was reinstated to work as a special education teacher for Defendant NYCDOE at KECSS, a highly desirable position in Brooklyn, after he discontinuance was reversed after the internal appeal hearing.  However, Defendants refused to pay any backpay for the period from August 2015-January 2016 when she was out of work.

76.     On or about March 4, 2016, Plaintiff received an official letter from Superintendent Prayor informing her that he had reversed the recommendation of denial of completion of probationary service effective September 8, 2015.

77.     Plaintiff was placed at KECSS but was given no back-pay or remuneration for lost health insurance and the emotional distress and psychological damages she suffered as a result of her unlawful termination.

78.     While at KECSS, she has been consistently rated as an Effective teacher, directed the play and talent show at the school, and was asked to lead a Professional Development for Integrated Coteaching because her classes were so successful at the school.

79.     Specifically, Plaintiff, as a result of her gap in employment from the NYCDOE, has sustained substantial economic damages, including:

> a. Loss of approximately five months of salary (including two weeks in August 2015 and 9 CAR days that should have covered by the FMLA);

10

    b.  Loss of an opportunity for retroactive pay under the new Collective Bargaining Agreement to which she would have otherwise been entitled;

    c.  Lost monies towards her pension and TDA;

    d.  Lost medical insurance coverage for herself and her family, which caused high out of pocket expenses due to chronic health conditions in the family;

    e.  Lost monies for per session work she did in August 2015 and other per session hour opportunities she could have received if working.

80.    Plaintiff also suffered extreme stress and anxiety as a result of her denial of completion of probation and removal from the payroll.

## FIRST CLAIM FOR RELIEF

### (Violation of FMLA for Interference and Retaliation)

81.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

82.    Based upon the foregoing, Defendants deliberately, intentionally and willfully violated the Family Medical Leave Act by interfering with the attempted exercise of her rights under the FMLA, 29 U.S.C. 2615 (a)(1) and retaliating against Plaintiff for taking the FMLA leave by terminating or denying completion of probation of Plaintiff's employment based on her requests for FMLA leave.

83.    As a result, Plaintiff suffered damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Tenure by Estoppel Pursuant to 42 USC Section 1983)

84.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

85.     Based on the reversal of Plaintiff's denial of certification of completion of probation and her reinstatement into Defendant NYCDOE, Plaintiff now has more than three years of Satisfactory and/or Effective service with Defendant NYCDOE.

86.     Defendants Prayor and McDonnell, by causing the revocation of Plaintiff's denial of certification of completion of probation, failed to take any action to deny or extend Plaintiff's probationary period.

87.     Defendants have openly permitted Plaintiff to continue to teach beyond the expiration of her probationary term.

88.     As a result of the foregoing, Plaintiff requests a declaration for tenure by estoppel in her special education license area.

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for declaratory relief and damages as follows:

A.     A declaratory judgment that Defendant is in violation of the interference and retaliation clause of the FMLA and has obtained tenure in her special education license area;

B.     Awarding Plaintiff compensatory damages pursuant to the FMLA;

C.      Awarding Plaintiff damages for pain and suffering and emotional distress and

mental anguish;

D.      Awarding Plaintiff tenure and back-pay from the date of her termination in

August 2015 until her reinstatement in January 2016;

E.      Awarding Plaintiff costs and reasonable attorneys' fees; and

F.      Such other and further relief as to this Court may deem necessary, just and proper.

Dated:          New York, New York
                June 16, 2017

                                **GLASS KRAKOWER LLP**
                                Attorneys for Plaintiff
                                100 Church Street, 8th Floor, Suite 800
                                New York, NY 10007
                                (212) 537-6859

                                By: ____s/_____
                                        Bryan D. Glass, Esq.